Mark A. CRONIN, Plaintiff,

v.

**WEST WHITELAND TOWNSHIP et al., Defendants.**

Civil Action No. 96–7844.

United States District Court, E.D. Pennsylvania.

Feb. 19, 1998.

Mark Andrew Cronin, Cronin and Scardino, Exton, PA, W.B. Sanderson, Bryn Mawr, PA, for Plaintiff.

Jane M. Shields, Siana and Shields, P.C., Exton, PA, Sherilyn M. Arnold, Siana and Shields, P.C., Exton, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an action under 42 U.S.C. § 1983 (" § 1983") growing out of a domestic dispute. Plaintiff claims he was unlawfully arrested by three West Whiteland Township police officers whom he had summoned to his residence during the course of an argument with his wife. Specifically, plaintiff alleges that defendants violated: his right to security of person and freedom from arrest except upon probable cause guaranteed by the Fourth Amendment; his right not to be deprived of liberty without due process of law guaranteed by the Fifth and Fourteenth Amendments; and his Sixth Amendment rights.[1] Further, plaintiff makes state law claims in tort for malicious prosecution and false arrest. Defendants assert in response that plaintiff's arrest was based upon probable cause and thus was legally justified. Before the Court is defendants' motion for summary judgment. For the reasons stated below the motion will be granted.

## I. FACTS

The historical facts set forth below are based on the undisputed facts on the record and the testimony given by plaintiff Mark A. Cronin, and his wife, Jody Cronin, at their respective depositions.[2] *See, e.g., Sharrar v. Felsing,* 128 F.3d 810, 814 (3d Cir.1997).

According to plaintiff, on July 20, 1996, at approximately 12:00 p.m., he placed a "911" call, telling the "911" operator that he and his wife were having a fight and that his wife was "going crazy on [him]." M. Cronin Dep. at 41. Plaintiff also testified that while on the telephone with the "911" operator, he took a steak knife out of a kitchen drawer and said to the operator that he was "going to hurt (himself) or something like that." M. Cronin Dep. at 42. Plaintiff further testified that, during the course of the "911" call, Jody Cronin took the telephone from plaintiff and "may have mentioned to the 911 operator that she was cut or hurt or something like that." M. Cronin Dep. at 41–42.

---

1. Plaintiff's original complaint also included Ninth and Tenth Amendment claims. These claims were dismissed by the Court upon motion by defendants. The claims for defamation and alienation of affection were later withdrawn by plaintiff.

2. Subsequent to the deposition, Jody Cronin sought to recant her testimony. A party may not create a genuine issue of material fact by mere recantation. "When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991). Here, Jody Cronin did not offer a satisfactory reason for the change from her deposition testimony, therefore, her subsequent affidavit will be disregarded.

While there is apparently no transcript of tape recordings of the "911" call, there is a computer report prepared by Chester County Emergency Services describing the call: "Husband cut wife w/ a knife, knife on table, husband in living room, wife in kitchen. Hung up, getting physical. Actor was hitting wife while on line." Defs.' Ex. "A". One of the two officers who initially responded to the "911" call, Matthew Herkner, testified that the "911" operator "advised that there was a domestic in progress with injuries." Herkner Dep. at 12. The other officer first responding to the call, John Krisch, testified that the officers received a radio call of a "violent domestic dispute [at the Cronin residence]." Krisch Dep. at 23.

The police arrived at the Cronin residence approximately ten minutes after the "911" call. When the police first saw plaintiff he was bleeding from a scratch on his arm. M. Cronin Dep. 44–45. Immediately after arriving at the scene, Officer Herkner spoke with plaintiff on the front steps to the house, while Officer Krisch went inside to speak with Jody Cronin in the kitchen. M. Cronin Dep. at 20–21. The kitchen was in a state of disarray (according to Officer Krisch, "Things were thrown around on the floor, on the kitchen table, on the counter tops."). Krisch Dep. at 26.[3]

At her deposition, Jody Cronin summarized the events leading up to the "911" call and described the call itself:

I came home from a store; and I was at this store getting a certain tape that I purchased. And before I went there I didn't have money, as usual. I tried to call my husband to get some money. And he talked to me and he refused to come home or have me drop by and get some money to go out and get some groceries and a few things plus the tape I wanted to get.

So I had gotten him a book, I guess a week—the week before that, or something. And I just started to devise this thing that I wanted to go out and take this book back so I could get some money just for that day and I would get him the book later.

So I did that and I came back and I told him when I got home. He didn't like that, so we started arguing. And we took the tape, that tape that I had, we were like Tug-of-Waring [sic] with it, back and forth, and it dropped down; he dropped it down and smashed it. And then, as far as I'm concerned, I picked it up and the tape just like must have brushed against me or something. And the reason I know that is because a couple days later this piece came out of my hand: so that's basically what happened.

And then he called—he had a knife and he started trying to cut himself. And he said that he was going to have me—he was going to say that I did it. And he was really like going wild with a knife. He didn't necessarily come at me, but he was going around the kitchen with it.

So then he called the police; he called 911 and started saying that I did this, I started coming at him with stuff and I was doing everything. So I got on the phone and I said, I need someone to come over and check my hand, it's bleeding like crazy: would someone just get here now because it really hurts. And he just, you know, basically wanted me to get in trouble for nothing.

J. Cronin Dep. at 14–15 (emphasis added).

In her deposition testimony, Jody Cronin also described the injury to her hand ("a cut and it wasn't—I guess it was like deep"), J. Cronin Dep. 17, and what she told the "911" operator ("my hand [is] bleeding like crazy; would someone just get here now because it really hurts"). J. Cronin Dep. at 15. Finally, Jody Cronin testified that she told Officer Krisch on the afternoon of the incident that, "basically, what I recall, is that [plaintiff] was flinging the knife around. He didn't come at me and necessarily cut me with it." J. Cronin Dep. at 21.

Following the incident, without first obtaining a warrant, the officers placed plaintiff under arrest at his residence on charges of simple assault, disorderly conduct, and harassment. Jody Cronin then proceeded to file a petition for a protection from abuse

---

3. Neither plaintiff nor Jody Cronin have challenged this description.

order naming plaintiff as respondent. The petition was granted by the district justice, and plaintiff was ordered to stay away from Jody Cronin for 48 hours. The day after the incident, however, Jody Cronin refused to testify against plaintiff at the preliminary hearing on the state charges. As a result, the district attorney was compelled to withdraw the prosecution. J. Cronin Dep. at 70. Four months later, plaintiff, a licensed attorney, filed this lawsuit, pro se.[4]

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, see id., 477 U.S. at 248, and

all inferences must be drawn, and all doubts resolved, in favor of the nonmovng party. See, e.g., Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).[5]

When determining whether there was probable cause to arrest in a § 1983 action, "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Sharrar, 128 F.3d at 818 (quoting Deary v. Three Un–Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984)). "The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest." Sharrar, 128 F.3d at 818 (citing Deary, 746 F.2d at 190).

## III. DISCUSSION

### A. 42 U.S.C. § 1983

■ Plaintiff argues that his constitutional rights guaranteed by the Fourth, Fifth, and Sixth Amendments were violated by defendants, and he seeks relief under § 1983.[6] A

---

**4.** Approximately three weeks after the complaint was filed, current counsel entered an appearance on behalf of plaintiff.

**5.** The burden shifting mechanism under Rule 56(c) is well-settled. First, on a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, a nonmoving party resisting a motion for summary judgment under Rule 56 cannot rest on its pleadings nor "rely merely upon bare associations, conclusory allegations or suspicions." Gans, 762 F.2d at 340 (quoting Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981)). In "order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant," Olson v. General Electric Astrospace, 101 F.3d 947, 951 (3d Cir.1996), and "must make a showing sufficient to establish the existence of every essential element to his case, based on the affidavits or by depositions and admissions on file." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992); see also, Anderson v. Liberty Lobby Inc., 477 U.S. at 255. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. To the contrary, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. In this regard, the "moving party need not support is motion [for summary judgment] with evidence disproving the nonmoving party's claim, but need only 'show—that is point out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir.1996), cert. denied, — U.S. —, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997) (quoting Celotex, 477 U.S. at 322). See also Stults v. Conoco, Inc., 76 F.3d 651, 657 (5th Cir .1996).

**6.** 42 U.S.C. § 1983 provides:
   Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any

claim under § 1983 requires that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived a person of rights, privilege or immunities secured by the Constitution or laws of the United States. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995), *cert. denied*, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995)). Because the Court finds that plaintiff suffered no violation of Constitutional or statutory rights, his § 1983 claim must fail.[7]

### 1. *Fourth Amendment Claim*

Plaintiff claims that his Fourth Amendment rights were violated when the police made a warrantless arrest without probable cause at plaintiff's residence. Specifically, plaintiff argues that defendant police officers did not have probable cause to believe that plaintiff had committed a crime.

The Fourth Amendment protects against "unreasonable searches and seizures."[8] The Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.'" *Ohio v. Robinette*, 519 U.S. 33, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). The "reasonableness", and hence constitutionality, of an arrest is determined by whether there was probable cause. *Scheuer v. Rhodes*, 416 U.S. 232, 245, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("When a court evaluates police conduct relating to an arrest its guideline is 'good faith and probable cause.'", *citing Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Probable cause means more than mere suspicion, but does not require the police to have evidence sufficient to prove guilt beyond a reasonable doubt. *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir.1984). Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing the

---

State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... 42 U.S.C. § 1983.

7. Plaintiff also claims that the police violated his Fourth Amendment rights when they did not confiscate the alleged weapon used to assault Jody Cronin, as prescribed by 18 Pa.Cons.Stat. § 2711(b), which provides that: "The arresting officer shall seize all weapons used by the defendant in the commission of the alleged offense." Officer Krisch testified that he "was not able to find anything that was indicative of being used as a weapon or instrument of a crime." Krisch Dep. at 28. The purpose of statutes such as 18 Pa.Cons.Stat. § 2711 is to afford victims of domestic violence protection, and to prevent further violence through the seizure of weapons. *See, e.g., Hoffman v. Union County Prosecutor,* 240 N.J.Super. 206, 572 A.2d 1200, 1204 (Law Div.1990). If any harm is caused by the failure of police officers to seize weapons, it would be to the victim, rather than the alleged perpetrator. Further, the violation of a state statute does not in and of itself give rise to a § 1983 violation. *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). Finally, this alleged failure by the police to follow procedure

prescribed by statute does not lessen the impact of the other evidence, which on balance, supports a finding that probable cause existed, the core of the constitutional inquiry, as set forth below.

Plaintiff further claims that defendant West Whiteland Township should be held liable for the alleged constitutional violations because it "failed to properly and adequately train the officers in the West Whiteland Police Department." Compl. ¶ 20(c). "[T]he 'proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.'" *Mark*, 51 F.3d at 1149–50 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Having found that there was no constitutional violation, the Court need not reach the issue of whether the municipality is liable for its alleged failure to train.

8. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)), *quoted by Sharrar*, 128 F.3d at 817–18. Courts must view the arrest within the "totality of the circumstances," using a "common sense approach" to determine whether there was probable cause. *Illinois v. Gates*, 462 U.S. 213, 230–41, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Sharrar*, 128 F.3d at 818. The test is "'whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed.'" *Sharrar*, 128 F.3d at 818 (quoting *Glasser*, 750 F.2d at 1206).

Pennsylvania law authorizes the arrest of a person if the police officer has probable cause to believe that the person has committed simple assault against his or her spouse, even if the officer did not witness the assault, provided that he or she "first observ[ed] recent physical injury to the victim or other corroborative evidence." [9] 18 Pa.Cons.Stat. § 2711(a). Under Pennsylvania law, a person commits simple assault when he or she "(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another...." 18 Pa.Cons.Stat. § 2701(a). In turn, "bodily injury" is defined as an "impairment of physical condition or substantial pain." 18 Pa.Cons.Stat. § 2301.

■ The facts, which are either admitted or undisputed, when viewed in the "totality of the circumstances," clearly support a finding that the police officers on the scene had probable cause to believe plaintiff had assaulted Jody Cronin. First, the statements made by both plaintiff and Jody Cronin during the course of the "911" call provided a strong indication that a domestic dispute was in progress at the Cronin home that required an immediate response, and the urgency of the call had been communicated to the police

9. The statute provides in pertinent part:

(a) General rule.—A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to simple assault), 2702(a)(3), (4) and (5) (relating to aggravated assault) or 2705 (relating to recklessly endangering another person) against his spouse or other person with whom he resides or has formerly resided although the offense did not take place in the presence of the police officer.

A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence.

18 Pa. Cons.Stat. § 2711(a). Among the underlying offenses listed above, simple assault is the only misdemeanor.

The Pennsylvania Superior Court noted:

The provisions of the Protection From Abuse Act [23 Pa. Cons.Stat. § 6101 *et seq.*], and the amendments to that act by the Probable Cause Arrest Statute [18 Pa. Cons.Stat. § 2711], as well as the various publicly and privately funded services provided to victims of domestic abuse were designed to ameliorate the inadequacies of the traditional approach to domestic violence.... They will be wholly ineffectual, however, if the police, the courts and counsel fail to fulfill their express, statutory obligations to assist victims of such abuse to pursue the benefits our "vanguard" reforms offer.

*Melvin v. Melvin*, 398 Pa.Super. 1, 580 A.2d 811, 815 (1990).

This type of statute is not uncommon. Other states also permit such arrests in cases of domestic violence. *See*, Nancy James, *Domestic Violence: A History of Arrest Policies and a Survey of Modern Laws*, 28 Fam.L.Q. 509 (1994) (collecting statutes), and other Pennsylvania statutes authorize such warrantless arrests in other contexts, *see, e.g.*, 18 Pa. Cons.Stat. § 3904 (theft); 18 Pa. Cons.Stat. § 6501 (scattering rubbish); 30 Pa. Cons.Stat. § 5502 (operating watercraft under influence of alcohol or controlled substance); 75 Pa. Cons.Stat. § 3731(c) (driving under influence of alcohol or controlled substance).

The United States Congress, recognizing the unique dangers posed by domestic violence, that traditional responses have failed to protect victims, and that arrests can stop abuse, has sought to "encourage States, Indian tribal governments, and units of local government to treat domestic violence as a serious violation of criminal law" by making grants available to states that, *inter alia*, "encourage or mandate arrests of domestic violence offenders based on probable cause that an offense has been committed." 42 U.S.C. § 3796hh; Grants to Encourage Arrest Policies, 61 Fed.Reg. 40727-01 (1996) (codified at 28 C.F.R. pt. 90). *See also*, H.R.Rep. 103–395 (1993); S.Rep. No. 103–138 (1993); S.Rep. 102–197 (1991); S.Rep. No. 101–545(1990) ("Arrest can stop abuse: police intervention may lead to as much as 62 percent fewer subsequent assaults, whether or not the abuser is convicted."), *citing* Bureau of Justice Statistics, *Special Report: Preventing Domestic Violence Against Women* 1 (August 1986).

on the scene by the "911" operator.[10] Second, the statements to the police officers on the scene both of plaintiff and of Jody Cronin, confirmed that the Cronins had been arguing and that at some point during the dispute plaintiff had been holding a knife. Third, the officers found the kitchen in the state of disarray. This circumstance permitted the police officers on the scene to infer that a physical struggle had occurred. Fourth, plaintiff's bleeding scratch and Jody Cronin's bloody hand supported the conclusion reached by the officers on the scene that Jody Cronin had been physically injured by plaintiff as a result of the incident. In sum, these facts, when viewed in their totality, and in light of the recognized "combustible nature of domestic disputes," *Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir.1998), support a reasonable belief that plaintiff had intentionally inflicted bodily injury on Jody Cronin.

Plaintiff argues that Jody Cronin did not suffer "bodily injury," that is, Jody Cronin's injury did not amount to an "impairment of physical condition or substantial pain." In support of this argument, plaintiff cites *Commonwealth v. Kirkwood*, 360 Pa.Super. 270, 520 A.2d 451, 454 (1987), in which the court held that bruises and slight cuts sustained at the hands of partner while dancing violently were neither a physical impairment, nor did they cause substantial pain, under the statute.[11] In *Kirkwood*, the court refused to characterize "temporary hurts resulting from trivial contacts which are a customary part of modern day living" as "bodily injury" for the purposes of the statute. *Kirkwood*, 520 A.2d at 454. *Kirkwood* is inapplicable because the injury here, unlike *Kirkwood*, resulted from a domestic confrontation, which drew blood from plaintiff and his wife, rather than from an activity, such as dancing, that is a "customary part of modern day living."

Plaintiff also seems to argue that his Fourth Amendment rights were violated because he was arrested inside his home without the police having first obtained a warrant.[12] It is true that the Supreme Court has held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest [absent exigent circumstances]." *Payton v. New York*, 445 U.S. 573, 576, 583–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, plaintiff's argument misses an important distinction[13] in Fourth Amendment

**10.** "When an officer has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause." *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir.1991), *quoted by Sharrar*, 128 F.3d at 818, 819 (citations omitted).

**11.** In *Kirkwood*, while dancing a "fast dance" with other members of her party at a tavern, plaintiff suffered "bruises and slight cuts on her arms, and her right knee and arms hurt." *Id.* at 452, 454. The *Kirkwood* court held that, "[t]emporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault." *Id.* at 454.

**12.** The doorway of the home is considered a "public," not a "private," space for the purposes of the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 41, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). Plaintiff admits he was speaking with the police on the "door stoop" at the time of he was physically taken into custody, M. Cronin Dep. 49–50. Therefore, since plaintiff was not inside his house, the officers properly arrested him if they had probable cause. For purposes of the Fourth Amendment, however, a person is "seized," or arrested, " 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he [or she] was not free to leave.' " *INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), *quoted by Sharrar*, 128 F.3d at 819. Further, " '[a]n arrest requires either physical force ... or, when that is absent, submission to an assertion of authority.' " *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), *quoted by Sharrar, id.* For the purposes of summary judgment, the Court will accept plaintiff's contention that he was "ordered outside the residence and was confined to that area by Officer Herkner until formally arrested." Pl.'s Mem. at 2–3; M. Cronin Dep. at 44–50 ("I believe I was asked to go outside immediately.... I was basically confined to the area right outside the door.").

**13.** The confusion is generally the result of a misreading of the Supreme Court's decision in *Payton*. The distinction between a warrantless entry and a warrantless arrest is explained by a leading commentator as follows:

[T]o assume that the warrant requirement really goes to the matter of arrest rather than the matter of entry (a mistake perhaps induced by *Payton*'s approval of an arrest warrant rather

jurisprudence—that between a warrantless *entry* into the home and a warrantless *arrest* once inside the home. While "[i]t is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' " *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)) once a peace officer has entered the home lawfully he or she may execute an arrest upon probable cause without a warrant, as if the arrest was executed in a public place. *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1245–46 (7th Cir.1994) (collecting cases).

In *Sheik–Abdi*, the police executed a warrantless arrest inside the home of a man who became "belligerent and uncooperative" while being offered aid by paramedics whom his wife had summoned to their home. *Sheik–Abdi*, 37 F.3d at 1242. The paramedics had called for police assistance and allowed the police into the home prior to the arrest. *Id.* The Seventh Circuit, affirming the district court's dismissal of a § 1983 action against the police officers for the warrantless arrest inside Sheik–Abdi's residence, held that under the Fourth Amendment, the police were permitted to execute an arrest upon probable cause inside a residence and without a warrant provided the police had lawfully entered the home. "Once an officer has lawfully entered the premises … the Constitution does not require that he [or she]

obtain a warrant before affecting an otherwise lawful arrest within." *Sheik–Abdi*, 37 F.3d at 1245 (citations omitted).

■ In this case, it is undisputed that the police entered the Cronin residence lawfully [14] at the request of plaintiff, and with his consent. Therefore, since the police officers had lawfully entered the premises, they were free to arrest plaintiff upon probable cause without the need to obtain a warrant first.

### 2. *Fifth and Sixth Amendment Claims*

Plaintiff argues his Fifth [15] and Sixth Amendment [16] rights were violated because, although plaintiff was never informed of his *Miranda* rights, Officer Herkner incorporated statements made by plaintiff in the criminal affidavit filed with the district justice.

■ Defendants respond that plaintiff suffered no Constitutional violation and the Court agrees. "The right protected under the Fifth Amendment is the right not to be compelled to be witness against oneself, whereas the 'right to counsel' during custodial interrogation recognized in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is merely a procedural safeguard not a substantive right." *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir.1994) (citing *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir.1976)). Failure to follow the prophylactic *Miranda* procedure does not amount to a Constitutional violation. *Id.*, citing *Warren v. City of Lincoln*, 864 F.2d

than a search warrant as sufficient) is wrong. Because (I) there is no general requirement that arrests be made with a warrant, and (ii) an arrest within premises is no "more threatening or humiliating than a street arrest," it should be apparent that *Payton* is grounded (as the Court put it) in "the breach of the entrance to an individual's home." That is, it is the unauthorized entry and not the arrest which gives rise to the warrant requirement.
2   W. LaFave, Search & Seizure § 6.1(c) at 584 (2d ed.1987) (citations omitted), *quoted by Sheik–Abdi*, 37 F.3d at 1245.

**14.** Police officers may enter a residence without a warrant upon voluntary consent by someone with authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ("The prohibition [in *Payton* ] does not apply … to situations in which voluntary consent has been obtained…."), *citing*

*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

**15.** Because the Fifth Amendment Due Process Clause, only applies to federal, not state, actors, in as much as plaintiff makes a due process claim under the Fifth Amendment, plaintiff has no cause of action because defendants are all state actors. *See, e.g., Hill v. Blum*, 916 F.Supp. 470, 473 (E.D.Pa.1996); *Student Doe v. Commonwealth of Pa.*, 593 F.Supp. 54, 56 (E.D.Pa.1984).

**16.** In his complaint, plaintiff argues that his right to be informed of the true nature and cause of an accusation secured by the Sixth Amendment was violated. Pl.'s Compl. ¶ 21. In his response to defendants' motion for summary judgment, however, plaintiff does not make this argument. Therefore, the Court can not consider plaintiff's Sixth Amendment claims in that respect.

1436, 1442 (8th Cir.) (holding the failure to give Miranda warnings does not give rise to a § 1983 violation), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976) (holding that violations of *Miranda* procedure do not subject a police officer to liability under the Civil Rights Act).

 Likewise, plaintiff's Sixth Amendment claim is without merit. Plaintiff complains that: (1) he "was never given any opportunity to contact his counsel ..."; and (2) "his lawyer for the preliminary arraignment that evening ... was indirectly provided through Jody Cronin who spoke with plaintiff's law partner." Pl.'s Mot. for Sum. J. at 16. The Sixth Amendment right to counsel attaches only after the initiation of adversary criminal proceedings, by way of formal charge, preliminary hearing, indictment, information or arraignment. *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Giuffre,* 31 F.3d at 1257. Regardless of how his legal representation was procured, the fact is that plaintiff was represented by counsel at his preliminary hearing before the district justice.[17] Therefore, because plaintiff was represented by counsel at the earliest point after the initiation of the adversary proceeding, there is no basis for his Sixth Amendment claim.

### B. *State Law Claims*

Having dismissed plaintiff's § 1983 claims, the Court will exercise its discretion, pursuant to 28 U.S.C. § 1367(c), and will decline supplemental jurisdiction over plaintiff's state law claims. *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995).

### IV. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of defendants on plaintiff's § 1983 claims, and plaintiff's state law claims are dismissed without prejudice.

17. Plaintiff was represented by his law partner's husband, also an attorney.

### *ORDER*

**AND NOW,** this 19th day of **February, 1998,** upon consideration of the motion of defendants for summary judgment and for sanctions pursuant to Fed.R.Civ.P. 11 (doc. no. 12), and plaintiff's response thereto (doc. no. 13), it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment on *plaintiff's § 1983 claims* is **GRANTED** for the reasons stated in the Court's memorandum of this date;

2. The clerk shall enter **JUDGMENT** in favor of defendants and against plaintiff on Count I;

3. Plaintiffs' state law claims stated in Counts II and III are **DISMISSED WITHOUT PREJUDICE;**

4. Defendants' motion for Rule 11 sanctions is **DENIED;** and

5. All of the claims having been adjudicated, the clerk shall mark the case **CLOSED.**[1]

**AND IT IS SO ORDERED.**

1. Plaintiff withdrew Counts IV and V (doc. no. 8).