IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Evan Howland,         :
                                         :
                Appellant   :
                                         :
          v.              : No. 945 C.D. 2023
                                         : Submitted: July 5, 2024
Lancaster County Prison    :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED:  August 19, 2024

Andrew Evan Howland (Inmate), appearing *pro se*, appeals from an order of the Court of Common Pleas of Lancaster County (trial court) entered on May 25, 2023, sustaining the Lancaster County Prison's (Prison) Preliminary Objections to Inmate's Second Amended Complaint (Complaint).[1]  For the reasons that follow, we affirm.

Inmate's Complaint alleges the following.[2]  Inmate was detained at the Prison from December 3, 2020, through February 9, 2022.  Complaint, ¶5,

---

[1] Inmate is proceeding *in forma pauperis* and was not required to file a Reproduced Record.  *See* Pa.R.A.P. 2151(b).  Although it was not required to do so, the Prison filed its own Reproduced Record.  Inmate's Complaint can be found at page 7a of the Reproduced Record (R.R.).

[2] We note that the Complaint complies with Pa.R.Civ.P. 1022, in that it contains separate numbered paragraphs; however, the numbered paragraphs contain numerous subparagraphs.  For clarity, we will omit references to the subparagraphs and will include citations to the Reproduced Record.

Reproduced Record (R.R.) at 9a.  During the course of his detention in the Prison, Inmate alleges that his constitutional rights under article I, sections 9[3] and 13[4] of the Pennsylvania Constitution were violated.  We will discuss these averments in turn.

## ARTICLE I, SECTION 9

The Complaint notes that Inmate was taken into custody around 4:00 a.m. on December 3, 2020, and that his preliminary arraignment was held at approximately 9:00 a.m. the same day.[5]  Inmate alleges that prior to the preliminary

---

[3] Article I, section 9 addresses "Rights of accused in criminal prosecutions" and provides:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.  The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, §9.

[4] Article I, section 13 relates to "Bail, fines and punishments" and states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  Pa. Const. art. I, §13.

[5] Under Pennsylvania Rule of Criminal Procedure 540, several things occur at a preliminary arraignment.  The defendant is presented with a copy of the criminal complaint and, if the defendant was arrested pursuant to a warrant, a copy of the warrant and supporting affidavits.  Pa.R.Crim.P. 540(C), (D).  The defendant is read the complaint and informed of his right to counsel, including the right to have counsel assigned; the right to a preliminary hearing; and the type and conditions of release on bail, if applicable.  Pa.R.Crim.P. 540(F).  The defendant is not questioned about the charges.  *Id.*  Lastly, a date for the preliminary hearing is determined, unless the right to a preliminary hearing is waived by a defendant represented by counsel.  Pa.R.Crim.P.

**(Footnote continued on next page…)**

2

arraignment, he was never given the opportunity to secure legal counsel to represent him at the proceeding in violation of article I, section 9 of the Pennsylvania Constitution. Inmate posits that if he had been given the opportunity to secure counsel, "[he] could have had [his] bail lowered or been released without bail. Either way, [he] could have been released from [the Prison's] custody and not subjected to the conditions there." Complaint, ¶16, R.R. at 11a-13a.

## ARTICLE I, SECTION 13

The remaining portion of Inmate's Complaint sets forth a litany of alleged actions by the Prison that purportedly subjected Inmate to "cruel punishment" during his confinement. In this regard, Inmate first asserts that while being detained at the Prison, he was unnecessarily forced to spend 46 days on "Suicide Status-SS2" (suicide status) although it was not believed that he was a suicide risk. Complaint, ¶17, R.R. at 14a. While on suicide status, Inmate alleges that he was given only one short-sleeved jumpsuit to wear each week; that he was not provided underwear; that he was given shoes "that contained many holes (similar to "crocs")," but was forced to take them off; that he was forced to walk barefoot on his dirty cell floor; that he was denied cleaning supplies and that no one cleaned his cell; that the Prison did not follow Covid-19 protocols; that he was forced by corrections officers to "leave [his] Covid-19 face mask hang on the door handle outside of [his] cell when [he] was inside of [his] cell;" that he was placed in cells without adequate heating during the winter months; that the light in his cell was kept on 24 hours per day, making it difficult to sleep; that he was not allowed to have a book, pencil, paper "or anything else in [his] cell to distract [him or] fill [his] time;"

---

540(G). Following the preliminary arraignment, the defendant is given the opportunity to post bail, secure counsel, and notify others of his arrest. Pa.R.Crim.P. 540(H).

3

and that he was forced to share a one-bed cell with a second individual who slept on the floor. Complaint, *id.* at 15a-19a. Inmate maintains that he told individuals at the Prison that the conditions were negatively impacting him, but to no avail. *Id.* at 20a. Inmate asserts that these actions put him "at risk of exposure to Covid-19, hypothermia, Methicillin-resistant Staphylococcus Aureus [(MERSA)], foot fungus and fecal bacteria." *Id.* at 17a.

Inmate further avers he was denied his "psychological, mood-stabilizing medication" for a period of six days by medical personnel at the Prison. Complaint, ¶17, R.R. at 24a-25a. Inmate contends that the lapse in medication impacted his mental health and caused dizziness. *Id.* at 25a.

Inmate also takes issue with the safety of the food he was served during his detention at the Prison. In this regard, Inmate asserts that he was served food that was "under the proper temperature," by individuals who did not wear hair nets, beard nets, or face masks. Complaint, ¶17, R.R. at 27a-28a. Inmate avers that he suffered from stomach cramping and diarrhea because of the unsafe food he consumed. *Id.* at 27a. Inmate states that he was forced to eat his meals in his cell, close to his toilet. Inmate takes issue with this "disgusting" practice and maintains it potentially exposed him to "fecal bacteria." *Id.* at 34a.

Inmate also alleges that the Prison showers contained black mold and bugs; that at times, the Prison withheld toilet paper; that he was denied telephone calls and exercise when the Prison was in lockdown; that corrections officers utilized pepper spray; that his cell did not have adequate hot water or antibacterial soap; that the Prison has chipping and peeling paint; that the Prison's heating, ventilation and air conditioning is inadequate; that his privacy was invaded because female corrections officers work on the male-only housing unit; that he was subjected to

unnecessary strip searches; and that he was placed in physical danger when he was allowed to congregate with known dangerous inmates. Complaint, ¶17, R.R. at 28a-33a.

Based on the aforementioned allegations, Inmate contends that the conditions at the Prison constitute "criminal behavior," violate any number of statutes, and defy policies set forth in the Prison's handbook. Complaint, ¶17, R.R. at 21a, 24a, 28a-30a, 33a-34a. In light of the severity of these perceived violations, the resulting impact on Inmate's health and safety, and the "mental anguish and humiliation" he suffered, Inmate seeks compensatory damages in the amount of $3,800,000 and punitive damages in the amount of $10,000,000. Inmate further asks that the Prison be directed to correct its substandard conditions and policies. *Id.* at ¶¶ 25-26, R.R. at 42a-43a.

The Prison filed Preliminary Objections to the Complaint. Pertinent here, the Prison demurred pursuant to Pa.R.Civ.P. 1028(a)(4), asserting that Inmate failed to state a cognizable cause of action upon which relief could be granted under article I, sections 9 and 13 of the Pennsylvania Constitution.[6]

To the extent Inmate asserted that the Prison denied his right to counsel prior to his preliminary arraignment on December 3, 2020, the Prison asserted that the Sixth Amendment to the United States Constitution, U.S. Const., amend. VI, guarantees a defendant the right to have counsel present at all critical stages of criminal proceedings. *See Missouri v. Frye*, 566 U.S. 134, 140 (2012).[7] Citing, *inter*

---

[6] The Prison also filed a Preliminary Objection pursuant to Pa.R.Civ.P. 1028(a)(3), alleging that the Complaint was insufficiently specific. The trial court dismissed this Preliminary Objection as moot and Inmate does not challenge that disposition on appeal.

[7] Inmate's Complaint does not raise a claim under the Sixth Amendment of the United States Constitution; however, in *Commonwealth v. Gwynn*, 943 A.2d 940, 947-48 (Pa. 2008), the Pennsylvania Supreme Court stated, "[t]he right to counsel, as guaranteed by [section] 9 of the **(Footnote continued on next page…)**

5

*alia*, the case of *Cronin v. West Whiteland Township*, 994 F. Supp. 595, 603 (E.D. Pa. 1998), the Prison argued that the right to counsel only attaches after the initiation of adversary criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. Once the right has attached, "the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the post-attachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 212 (2008).

The Prison argued that the preliminary arraignment constituted the point where adversary criminal proceedings were initiated against Inmate and the Sixth Amendment's right to counsel attached. The Prison reasoned that counsel is only required to be present during "critical stage" proceedings that occur *after* the proceeding in which the right attached, *i.e.*, the preliminary arraignment. *See Commonwealth v. Gwynn*, 943 A.2d 940, 948 (Pa. 2008) (stating that the right to counsel attaches at the initiation of adversary judicial proceedings, which is generally the arraignment).

With regard to Inmate's claims under article I, section 13 of the Pennsylvania Constitution, the Prison asserted:

> [Inmate's Complaint] again merely lists his general dislikes about being mildly cold in his cell, having a cellmate, eating meals in his cell, other inmates refusing to shower, being given a dirty blanket, [the Prison's] [Covid]-19 protocols, the quality of the food, other inmates starting fights with each other, etc. Even accepting the facts alleged in [Inmate's Complaint] as true, [Inmate] has set forth no legal basis to support his claims

---

Pennsylvania Constitution is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right attaches."

6

for violation of constitutional rights, common law rights, civil rights or human rights violations.

Prison's Brief in Support of Preliminary Objections, R.R. at 65a.[8]

By order dated May 25, 2023, the trial court sustained the Prison's demurrers and dismissed Inmate's Complaint with prejudice. On appeal, Inmate argues that the trial court erred in sustaining the Prison's demurrers to his challenges brought pursuant to article I, sections 9 and 13 of the Pennsylvania Constitution.

## DISCUSSION

The question presented in a demurrer is whether, on the facts averred, the law indicates *with certainty* that no recovery is possible. *Richardson v. Wetzel*, 74 A.3d 353, 356 (Pa. Cmwlth. 2013) (emphasis added). In reviewing preliminary objections, "[a]ll well-pled facts in the complaint and reasonable inferences arising from those facts, are accepted as true. However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted." *Id.* A court will sustain preliminary objections "only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." *Delaware Riverkeeper Network v. Sunoco Pipeline*, 179 A.3d 670, 680, n.5 (Pa. Cmwlth. 2018) (citation omitted). Finally, our "review of an order granting preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its discretion or committed an error of law." *Chichester School District v. Chichester Education Association*, 750 A.2d 400, 402 n.8 (Pa. Cmwlth. 2000) (citation omitted).

---

[8] We acknowledge that Inmate's Complaint does not allege that other inmates refused to shower or that he was given a dirty blanket. These averments were set forth in previous versions of Inmate's pleadings.

## ARTICLE I, SECTION 9

On appeal, Inmate again argues that his right to counsel pursuant to article I, section 9 of the Pennsylvania Constitution was violated because, prior to his preliminary arraignment, he was not given the opportunity to secure legal counsel for the proceeding. Inmate admits that the right to counsel only attaches after the initiation of adversary criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Cronin*, 994 F. Supp. at 603. However, citing the case of *Commonwealth v. McCleland*, 233 A.3d 717 (Pa. 2020), Inmate contends that the criminal proceedings against him commenced when he was arrested and charged by the police department. Inmate notes "[he] was arrested and charged prior to the [p]reliminary [a]rraignment, and thus [he] should have been afforded counsel for the arraignment." Inmate's Brief at 11.

The Prison disagrees that adversarial proceedings commenced against Inmate when his arrest took place or that his right to counsel attached prior to his preliminary arraignment. The Prison argues that the decision in *McCleland* does not support Inmate's assertions stating: "*McCleland* . . . merely states when a criminal *case* begins and not when *adversarial proceedings* commence, which would initiate the right to counsel." Prison's Brief at 9 (emphasis added).

We agree with the Prison. "The right to counsel *attaches* at the preliminary arraignment, but the defendant does not have a right to counsel *at* the preliminary arraignment, which is the point that the defendant enters the criminal prosecutorial system." *Flora v. Luzerne County of the Commonwealth of Pennsylvania*, 103 A.3d 125, 139 (Pa. Cmwlth. 2014), *aff'd in part and rev'd in part on other grounds*, 146 A.3d 715 (Pa. 2016). In *Rothergy*, 554 U.S. at 212 (footnote omitted), the United States Supreme Court held that

8

> [o]nce attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the post attachment proceedings; what makes a stage critical is what shows the need for counsel's presence. Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself.

Notably, the Pennsylvania Rules of Criminal Procedure incorporate this requirement. Rule 122 states that counsel shall be appointed "in all court cases, *prior to the preliminary hearing* to all defendants who are without financial resources or who are otherwise unable to employ counsel." Pa.R.Crim.P. 122(A)(2) (emphasis supplied).

Accepting all well-pled facts of Inmate's Complaint as true, it is apparent the trial court did not err in granting the Prison's demurrer. Contrary to Inmate's assertions, his arrest did not constitute a "formal charge" as that term is used in *Cronin*. Adversary proceedings had not begun at the time of Inmate's arrest; thus, his right to counsel did not attach until after the preliminary arraignment. *Flora*. Because Inmate did not plead facts legally sufficient to show that the Prison violated his constitutional rights under article 1, section 9 of the Pennsylvania Constitution, we affirm the trial court's disposition of this demurrer.

## ARTICLE I, SECTION 13

Next, Inmate asserts that the trial court improperly sustained the Prison's demurrer to that portion of his Complaint challenging prison conditions. Inmate provides an overview of the violations set forth in the Complaint, and asserts

9

that he adequately pled that he was "adversely affected by [the Prison's] actions . . . ." Inmate's Brief at 14. Citing the case of *Farmer v. Brennan*, 511 U.S. 825 (2021), Inmate stresses that prisons must provide humane conditions of confinement by ensuring that inmates "receive adequate food, clothing, shelter, and medical care and by taking reasonable steps to guarantee the safety of inmates . . . ." Inmate's Brief at 16. Inmate believes the Prison did not fulfill these duties, reiterating that he was denied medication, provided one jumpsuit per week while on suicide status, and was placed in physical danger when a corrections officer "put another inmate into the general population with [him], right after [the other inmate] had attacked [fellow inmates]." *Id.* Per Inmate, the allegations of his Complaint are sufficient to overcome the Prison's demurrer.

In response, the Prison notes that the majority of Inmate's claims of cruel and unusual punishment relate to his placement on suicide status and the limitations of prison life that resulted therefrom. The Prison cites *Florence v. Board of Chosen Freeholders of the County of Burlington*, 566 U.S. 318, 326 (2012), to support the proposition that prison officials "must be given substantial discretion to devise reasonable solutions to the problems they face." Prison's Brief at 10. The Prison emphasizes that a regulation impinging on an inmate's constitutional rights must be upheld "if it is reasonably related to legitimate penological interests." *Id.* at 11 (citing *Florence*). The Prison contends that it has a legitimate penological interest in preventing inmates in its care from committing suicide. Inmate met many criteria for being placed in the unit including, "the seriousness of his charges, the shame that is often felt with child sex charges, the amount at which his bail was set, and later, the length of his sentence." *Id.* Thus, Inmate failed to state a claim that he suffered "cruel and unusual" punishment when he was placed on suicide status.

10

To the extent that Inmate alleges that he was denied his "psychological, mood-stabilizing medication" for a period of six days, the Prison argues that Inmate failed to demonstrate that the Prison acted with deliberate indifference and intentionally denied or delayed Inmate access to medical care or intentionally interfered with Inmate's treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that deliberate indifference to serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed in the Eighth Amendment, U.S. Const. amend. VIII).[9] The Prison argues that a six-day lapse in renewing Inmate's medication falls well below the standard of intentionally delaying care.

The Prison further maintains that the Inmate failed to state a cognizable claim that he suffered an invasion of privacy. An inmate does not have an expectation of privacy in prison. *See e.g.*, *Thomas v. Holtz*, 707 A.2d 569, 572 (Pa. Cmwlth. 1998). Furthermore, the Prison notes, it is common for male detainees to be supervised by female corrections officers.

As for Inmate's remaining allegations concerning the conditions of his incarceration, the Prison argues that they do not reflect "unnecessary and wanton" infliction of pain that are "totally without penological justification." Prison's Brief at 13 (citing *Tindell v. Department of Corrections*, 87 A.3d 1029, 1041 (Pa. Cmwlth. 2014)).

At the outset, we recognize that prison officials are afforded vast discretion in the promulgation and enforcement of policies governing prison operations and must be able to use their judgment and to implement those policies necessary to preserve order and maintain prison security without judicial

---

[9] Pennsylvania's constitutional prohibition against cruel and unusual punishment is coextensive with the Eighth Amendment of the United States Constitution and affords no broader protection. *Jackson v. Hendrick*, 503 A.2d 400, 404 n.10 (Pa. 1986).

interference. *Tindell*, 87 A.3d 1035. With that said, prisoners do not lose all constitutional rights as a result of imprisonment. *Id.* at 1036. "A prisoner's constitutional rights must, however, be weighed against the government's concern with the maintenance of order, discipline and security within correctional institutions." *Id.* (citing *Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984)).

We are cognizant that the United States Constitution "does not mandate comfortable prisons . . . ." *Farmer*, 511 U.S. at 833 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). In *Tindell*, this Court emphasized:

> When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

87 A.3d at 1041 (quoting *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 199-200 (1989)). "Prison officials must ensure that inmates are not deprived of the 'minimal civilized measure of life's necessities,' including food, clothing, shelter, sanitation, medical care, and personal safety." *Id.* (quoting *Rhodes*, 452 U.S. at 346).

To state a cognizable claim that prison conditions violate a plaintiff's rights under the Eighth Amendment, a plaintiff must satisfy both an objective and subjective requirement. The plaintiff must show that the conditions are "sufficiently serious" from an objective point of view, "meaning that they involve denial of the minimum civilized measure of life's necessities . . . ." *Neely v. Department of Corrections*, 838 A.2d 16, 20 n.6 (Pa. Cmwlth. 2003) (citing *Farmer*, 511 U.S. at 832; *Rhodes*, 452 U.S. at 347). A plaintiff must also demonstrate that prison officials

12

acted "subjectively with 'deliberate indifference.'" *Id.* (citing *Farmer*, 511 U.S. at 837).

Based on our review of this action, it is apparent that Inmate fails to state a claim under either the Eighth Amendment or article I, section 13. Inmate's Complaint does not adequately set forth facts to establish that conditions of his incarceration were sufficiently serious to deny him the minimum civilized measure of life's necessities. Inmate was provided food, clothing, and medical care. The fact that the items and services provided by the Prison did not meet Inmate's personal standards is of no moment. Without more, the averments of Inmate's Complaint do not support the assertion that he suffered any ongoing, systemic deprivation of his basic human needs. Moreover, even accepting the truth of Inmate's averments, any harm that he has suffered is speculative at best.

We agree with the trial court that Inmate has failed to allege a cognizable claim that he suffered cruel and unusual punishment; accordingly, we conclude the trial court did not err in sustaining the Prison's demurrer to the prison conditions portion of Inmate's Complaint.

Accordingly, the order of the trial court is affirmed.

_____
MICHAEL H. WOJCIK, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew Evan Howland,     :
              :
      Appellant :
              :
    v.       : No. 945 C.D. 2023
              :
Lancaster County Prison   :

# **O R D E R**

AND NOW, this 19th day of August, 2024, the May 25, 2023, order of the Court of Common Pleas of Lancaster County is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge