Lorraina J. TELEPO, Plaintiff,

v.

**PALMER TOWNSHIP,**
**et al., Defendants.**

No. Civ.A. 97–6053.

United States District Court,
E.D. Pennsylvania.

Feb. 26, 1999.

**600**

Kingsley A. Jarvis, Norristown, PA, Thomas K. Lehrich, Allentown, PA, for plaintiff.

Donald E. Wieand, Jr., Stevens & Lee, Lehigh Valley, PA, for defendants.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

This is a civil rights case arising out of police intervention in a domestic dispute. Plaintiff alleges that defendants. Palmer Township, Palmer Township Police Department, Chief of Police Bruce Fretz, Officer Susan Coopersmith, and Officer Glenn Koehler, during the course of executing a Protection from Abuse Order obtained by plaintiff's husband against plaintiff, and in retaliation for plaintiff having been openly critical of the Palmer Township Police Department on a prior occasion, unreasonably seized her property, denied her a liberty interest, used excessive force against her, defamed her in the local press, and unlawfully filed a criminal complaint against her. Before the Court is defendants' motion for summary judgment. For the following reasons, the Court will grant the motion.

## II. BACKGROUND

The following facts are not in dispute or are construed in the light most favorable to plaintiff. On September 14, 1996, plaintiff and her husband, Harold Winters ("Winters"), had an altercation at plaintiff's residence. At approximately 11:30 p.m., Winters left the residence and went to the Palmer Township Police Department. While at the police station, Winters told Officer Susan Coopersmith ("Officer Coopersmith") that plaintiff allegedly scratched Winters on his chest with an electric dental flosser, punched him about the body, and smashed the windshield of Winters' van. In turn, Officer Coopersmith informed Winters that he could obtain an emergency Protection from Abuse ("PFA") Order against plaintiff. Also while at the police station, Officer Coopersmith caused another officer to take photographs of the injuries to Winters' chest. Thereafter, Winters drove his vehicle, following behind Officer Coopersmith, to the office of the District Justice in Northampton County some twenty minutes away to request the issuance of such order. The District Justice, after speaking with Winters, signed an emergency PFA Order, ordering plaintiff to refrain from abusing Winters and evicting plaintiff from her residence.

At approximately 1:30 a.m., Officer Coopersmith and Officer Glenn Koehler ("Officer Koehler") arrived at plaintiff's residence. The officers served plaintiff with the emergency PFA Order, and advised plaintiff that, pursuant to the order, she would have to leave the residence for approximately one and a half days. Plaintiff asserted to the officers that she was the sole leaseholder of the residence and that Winters did not reside there. Notwithstanding plaintiff's protestations, the officers proceeded to execute the PFA Order and removed plaintiff from her residence.

While inside the residence, the officers informed plaintiff that Winters had accused her of assaulting him with an electric dental flosser and that Winters was going to press criminal charges against plaintiff. Officer Koehler asked plaintiff to produce the dental flosser that was allegedly used to attack Winters. Plaintiff retrieved the dental flosser, as requested, and handed it to Officer Koehler, who then told plaintiff that he had to "take" the dental flosser with him.

Before departing with the officers, plaintiff requested permission to change out of her nightclothes. The officers agreed plaintiff could change her clothes in the bathroom. While changing, plaintiff shut

the bathroom door. Officer Coopersmith then pushed the bathroom door open, and told plaintiff that the bathroom door had to remain open while she changed. When plaintiff attempted to shut the bathroom door again, Officer Coopersmith "threw" plaintiff's arm away, demanding that the bathroom door stay open. Thereafter, the officers escorted plaintiff to her car, and plaintiff spent the night away from her residence.

On September 17, 1996, Officer Coopersmith filed simple assault and harassment charges against plaintiff based on the alleged altercation that occurred between plaintiff and Winters.[1] On October 15, 1996, a preliminary hearing was held on the simple assault and harassment charges against plaintiff. At that hearing, Winters testified that plaintiff had assaulted him with the dental flosser. Photographs taken by the police on the night of September 14, 1996 depicting Winters' injuries were entered as evidence. The District Justice concluded that the Commonwealth made out a prima facie case for simple assault and harassment, and the case was bound over for trial. Subsequent to the filing of the charges, Winters retracted his statement, and as a result, a nolle prosequi was entered as to the simple assault and harassment charges against plaintiff.[2] On December 11, 1996, plaintiff's record as to these criminal charges was expunged.

Plaintiff claims that the motive for defendants violating her constitutional rights arose from an incident involving the Palmer Township and Danville Police Departments. On June 30, 1996, plaintiff attempted to contact her adult son in Danville, Pennsylvania via certified mail. On July 26, 1996, plaintiff received a letter from her son's attorney, which stated that her son deemed plaintiff's contact as harassing, that he did not want to have any further contact with plaintiff, that he had contacted the police regarding this matter, and that any further contact by plaintiff would result in criminal prosecution. On August 9, 1996 around 10:00 p.m., at the request of the Danville Police Department, Officer Wayne Smith of the Palmer Township Police Department went to plaintiff's residence and delivered the following message to plaintiff: "If you continue to attempt to contact your son, you will be charged criminally." Thereafter, plaintiff wrote a letter to the Palmer Township and Danville Police Departments complaining of what she claimed was the officer's unprovoked, inappropriate, and harassing conduct of invading plaintiff's privacy by delivering a threatening message at such a late hour. No disciplinary action was taken against Officer Smith or anyone in the Palmer Township and Danville Police Departments as a result of plaintiff's letter. This incident hereinafter will be referred to as the "Danville incident."

Plaintiff asserts eight (8) counts against the defendants and seeks relief under 42 U.S.C. § 1983:[3] (1) defendants engaged in an unreasonable seizure of her property and denial of plaintiff's liberty interest in wrongfully evicting plaintiff from her home

---

**1.** Although not directly related to the instant motion, record also reflects that during the relevant period, Winters attempted to obtain a second PFA Order against plaintiff in Lehigh County. Defs.' Mot. for Summ. J., App. § 6.

**2.** Subsequent to the preliminary hearing where Winters testified that plaintiff had assaulted him with the dental flosser, Winters sought to recant his testimony at his deposition. Winters, however, has not offered a satisfactory explanation for the dramatic change from his testimony under oath at the preliminary hearing. *See Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.1991); *Cronin v. West Whiteland Township*, 994 F.Supp. 595,

596 n. 2 (E.D.Pa.1998) (finding that a party may not create a genuine issue of material fact by mere recantation, without a satisfactory explanation). In any event, the Court need not determine which version of events is correct, since it is fact that Winters' sworn testimony was given at the preliminary hearing, and not the truth of the testimony, that is relevant in this case.

**3.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected,

where she was the sole leaseholder, pursuant to the Fourth and Fourteenth Amendments; (2) denial of equal protection, pursuant to the Fourth, Fifth and Fourteenth Amendments;[4] (3) use of excessive force in throwing plaintiff's arm away from the bathroom door, pursuant to the Fourth and Fourteenth Amendments; (4) malicious prosecution of plaintiff for simple assault and harassment without probable cause, in violation of the Fourth and Fourteenth Amendments; (5) Pennsylvania law defamation claim for illegally releasing information regarding the simple assault and harassment charges to the local press; (6) defendants unreasonably seized plaintiff's property, namely the dental flosser, without a warrant, pursuant to the Fourth Amendment; (7) Chief Bruce Fretz ("Chief Fretz") has supervisory liability for approving the filing the of the criminal charges against plaintiff, and the failure to train and supervise officers in the use of proper physical force and appropriate execution of PFA Orders; and (8) Palmer Township and the Palmer Township Police Department have municipal liability and were deliberately indifferent to the custom and practice of officers using excessive force and improperly evicting people pursuant to a PFA Order. Plaintiff claims that defendants violated her civil rights in retaliation for plaintiff's earlier complaint concerning the inappropriate conduct of the Palmer Township Police Department in the Danville incident. Defendants assert that all of plaintiff's claims are legally flawed and that, therefore, they are entitled to summary judgment in their favor.

## III. LEGAL STANDARD

### A. Summary Judgment Pursuant to Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

In assessing whether summary judgment should be granted, the Court will address each of plaintiff's claims in turn.

### A. Defendants Are Entitled to Qualified Immunity Against Plaintiff's Fourth Amendment Claim of Unreasonable Seizure.

Plaintiff alleges that defendants engaged in an unreasonable seizure of her property

---

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... 42 U.S.C. § 1983.

4. Plaintiff has conceded that there is no evidence of gender discrimination, therefore, summary judgment shall be entered in defendants' favor and against plaintiff as to plaintiff's equal protection claim. Pl.'s Resp., § C, at 11.

by wrongfully evicting plaintiff from her residence, by not conducting an independent investigation of Winters' allegations of abuse before advising Winters that he had a right to request an emergency PFA Order, by encouraging Winters to request a PFA Order, particularly by leading Winters to the office of the District Justice, and by not investigating plaintiff's assertions that Winters did not live at the residence before executing the PFA Order, in violation of the Fourth Amendment. Plaintiff also alleges that defendants' improper eviction was a deprivation of plaintiff's liberty interest, in violation of the Fourteenth Amendment. In response, defendants argue that Officers Coopersmith and Koehler are entitled to qualified immunity because the officers' actions were objectively reasonable in executing a facially valid PFA Order.[5]

■ The test for the applicability of qualified immunity is well-settled:

> Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... [T]he inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of clearly established law and the information in the officer's possession."

*Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Under this test, in section 1983 actions, particularly those in-

volving the Fourth Amendment, qualified immunity decisions require the Court to determine the currently applicable law, and whether that law was clearly established at the time the alleged constitutional violation occurred. *See Rogers v. Powell,* 120 F.3d 446, 453 (3d Cir.1997). If the law was clearly established at the time of the conduct at issue, then the Court must determine whether the actions of the officers, equipped with the knowledge of clearly established law, were objectively reasonable. *See Sharrar v. Felsing,* 128 F.3d 810, 828 (3d Cir.1997). Moreover, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ Initially, with regard to plaintiff's Fourteenth Amendment claim, the Court finds that plaintiff has not specified what liberty interest was violated by defendants' allegedly unlawful act of eviction. Nowhere in plaintiff's complaint does plaintiff indicate a violation of a Fourteenth Amendment liberty interest, and only briefly does plaintiff mention in her response to defendants' motion for summary judgment that an arrest without probable cause is a deprivation of liberty and actionable under section 1983. The Court need not reach the issue of whether an arrest under these circumstances violates a Fourteenth Amendment liberty interest because the record is conclusive that plaintiff was never arrested. An arrest is:

5. Defendants also assert that Officers Coopersmith and Koehler are entitled to absolute immunity. The Court need not reach this issue because it finds that, under the objectively reasonable standard, qualified immunity provides ample protection against mistaken judgments for "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Therefore, the Court will only address whether defendants are entitled to qualified immunity. *See Johnson v. City of*

*Chester,* 10 F.Supp.2d 482, 487 n. 5 (E.D.Pa. 1998) ("Government officials are accorded qualified rather than absolute immunity in order to accommodate two important interests: the officials' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages, and the public's interest in recovering damages when government officials unreasonably invade or violate individual rights under the Constitutions and laws of the United States.").

the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on the arrestee; (2) or by any act that indicates an intention to take the arrestee into custody and that subjects the arrestee to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. There can be no arrest where there is no restraint and the restraint must be under real or pretended legal authority. However, the detention of a person need not be accompanied by formal words of arrest or station house booking in order to constitute "arrest." Whether the restraint or detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the detention, and the degree of restraint. The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associate with formal arrest.

5 Am.Jur.2d Arrest § 2 (1995) (footnotes omitted). *See also United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980) ("We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatsoever for invoking constitutional safeguards."); *United States v. Lampkin,* 464 F.2d 1093 (3d Cir.1972) (citing definition of arrest as stated in previous version of volume 5, American Jurisprudence Second); *Owens v. County of Delaware,* No. 95–4282, 1996 WL 476616, at *11 (E.D.Pa. Aug.15, 1996) ("[A]lthough precise definitions are not possible, one court has noted that 'an arrest is a seizure characterized by highly intrusive or lengthy search or detention.'") (quoting *United States v. Espinosa,* 782 F.2d 888, 891 (10th Cir.1986)); *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975, 977 (1982) ("We have defined an arrest as any act that indicates an intention

to take the person into custody and subjects him to the actual control and will of the person making the arrest."); Restatement (Second) of Torts § 112 (1965) ("An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law.").

In this case, there is no claim that plaintiff was restrained, did not have freedom of movement, or that restrictions were imposed upon plaintiff. Requiring a person to leave her residence pursuant to a PFA Order does not rise to the level of an arrest. Therefore, the Court will grant summary judgment in favor of defendants as to plaintiff's Fourteenth Amendment claim.

■ As to plaintiff's claims under the Fourth Amendment, plaintiff's right to be free from unreasonable searches and seizure, the Court agrees that such a right was clearly established at the time the incident occurred. *See Maryland v. Garrison,* 480 U.S. 79, 86, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The issue, then, is whether, in light of the clearly established law and information in the officers' possession, the officers' conduct in executing the PFA Order was objectively reasonable, such that a reasonable officer possessing the same information would have believed his conduct to be lawful.

■ The uncontested facts show that Winters voluntarily went to the police station to report the alleged abuse by plaintiff. Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 93. Winters told Officer Coopersmith of the alleged abuse by plaintiff with the dental flosser. Pl.'s Resp., App. § 11, Coopersmith Dep. at 8. Winters showed his injuries to Officer Coopersmith, which were documented by police photographs. *Id.* at 8, 12. Upon being advised of his right to request an emergency PFA Order, Winters chose to do so and

drove in his own vehicle to the office of the District Justice, following behind Officer Coopersmith. *Id.* at 9–10. Winters himself spoke to the District Justice and requested an emergency PFA Order against plaintiff at the address of plaintiff's residence. *Id.* at 10, 13–14. The District Justice granted Winters an emergency PFA Order ordering plaintiff to refrain from abusing Winters, and evicting plaintiff from her residence. *Id.* at 14. Winters signed the emergency PFA Order, indicating that emergency relief was required because there was "immediate and present danger of abuse" by plaintiff. Defs.' Mot. for Summ.J., App. § 1. With the facially lawful order in hand, Officers Coopersmith and Koehler proceeded to evict plaintiff from the residence. The Court finds that the conduct of Officers Coopersmith and Koehler in evicting plaintiff pursuant to a facially valid PFA Order was objectively reasonable.[6]

■■ Plaintiff also claims that the officers acted in retaliation for plaintiff's prior complaint based on the Danville incident by actively encouraging Winters to get the emergency PFA Order in order to evict plaintiff from her residence. This contention, even if true, is irrelevant. This is so because the qualified immunity inquiry is an objective one, which asks how a reasonable officer would have acted under these circumstances. Motive, on the other hand, involves a subjective appreciation of the individual officer's state of mind. *See Parkhurst v. Trapp*, 77 F.3d 707, 712 (3d Cir.1996) ("The objective facts control a decision on summary judgment [to determine whether conduct was objectively reasonable], regardless of allegations of intent.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). The bottom line is that, regardless of motive, Officers Coopersmith's and Koehler's conduct in executing a court order issued by a District Justice pursuant to state law upon the request by the alleged victim in this case was objectively reasonable.

Plaintiff also argues that the officers should have further investigated Winters' allegation that, in fact, he was abused by plaintiff and lived at plaintiff's residence before evicting plaintiff. However, the Court notes that on the night of the inci-

---

6. The conduct of Officers Coopersmith and Koehler was not only reasonable, it may have been mandated by law. The Protection From Abuse Act permits a plaintiff to petition the court for relief from abuse by a defendant on behalf of plaintiff, plaintiff's minor children, or an incompetent adult. 23 Pa.Cons.Stat. Ann. §§ 6101–6118. "The purpose of the Protection from Abuse Act is to protect victims of domestic violence from the perpetrators of such abuse." *Lee v. Carney*, 435 Pa.Super. 405, 645 A.2d 1363, 1364 (1994). To provide relief, the court can order the defendant to refrain from abusing the plaintiff; grant possession of the residence to the plaintiff by evicting the defendant; award temporary custody or visitation rights with minor children; prohibit the defendant from having any contact with the plaintiff; order the defendant to relinquish any weapons used to abuse the plaintiff; direct the defendant to pay the plaintiff for reasonable losses; and direct the defendant to refrain from stalking or harassing the plaintiff. 23 Pa.Cons.Stat.Ann. § 6108(a).

The Pennsylvania Superior Court noted:
The provisions of the Protection From Abuse Act ..., as well as the various publicly and privately funded services provided to victims of domestic abuse were designed to ameliorate the inadequacies of the traditional approach to domestic violence.... [It] will be wholly ineffectual, however, if the police, the courts and counsel fail to fulfill their express, statutory obligations to assist victims of such abuse to pursue the benefits our "vanguard" reforms offer.
*Melvin v. Melvin*, 398 Pa.Super. 1, 580 A.2d 811, 815 (1990).

The United States Congress recognizing the unique dangers posed by domestic violence, that traditional responses have failed to protect victim, and that arrests can stop abuse, has sought to "encourage States, Indian tribal governments, and units of local government to treat domestic violence as a serious violation of criminal law" by making grants available to states that, inter alia, "encourage or mandate arrests of domestic violence offenders based on probable cause that an offense has been committed." 42 U.S.C. § 3796hh; *see also Cronin v. West Whiteland Township*, 994 F.Supp. 595, 600 n. 9 (E.D.Pa.1998).

dent, Winters told the District Justice, in the presence of Officer Coopersmith, that he lived at plaintiff's residence, Pl.'s Resp., App. § 11, Coopersmith Dep. at 14, and Winters signed the PFA Order that listed his address as plaintiff's residence. Defs.' Mot. for Summ.J., App. § 1. Subsequently, Winters testified under oath at the preliminary hearing concerning the criminal charges against plaintiff that he resided at plaintiff's residence. *Id.,* App. § 7, at 17.

Additionally, plaintiff cites no authority that imposes upon police officers a duty to investigate prior to executing a facially lawful PFA Order issued by a judicial officer.[7] The Court's own research has found no authority within either the Protection from Abuse Act or case law in this circuit mandating that an officer conduct further investigation before informing an abused person of his right to seek a PFA Order or before executing a facially lawful PFA Order. To the contrary, section 6105(b) of the Protection from Abuse Act appears to require absolutely that police officers give to a person claiming to be the victim of domestic violence written and oral notice of domestic violence services in the community, including the person's right to request a PFA Order.[8] Moreover, the statute contemplates that police officers will enforce PFA Orders against persons accused of committing domestic violence.[9] Therefore, the Court finds that Officers Coopersmith and Koehler were under no duty to conduct their own investigation prior to informing Winters of his right to request a PFA Order or before executing a facially valid PFA Order upon plaintiff.

The Court concludes that while plaintiff had a clearly established right to be free from unreasonable interference by Officers Coopersmith and Koehler, the conduct of Officers Coopersmith and Koehler in executing the facially valid PFA Order was objectively reasonable. Therefore, Officers Coopersmith and Koehler are entitled to qualified immunity against plaintiff's Fourth Amendment claim, and defendants are entitled to summary judgment as a matter of law as to this issue.

B. *Plaintiff Has Failed to Show that Defendants Used Excessive Force.*

Plaintiff alleges that defendants violated her Fourth and Fourteenth Amendment

---

**7.** By analogy, as a general proposition, a police officer executing a facially valid arrest warrant issued by a judicial officer has no duty " 'to investigate independently every claim of innocence, whether the claim is based on mistaken identity' or otherwise. Law enforcement officers who arrest solely on the basis of such a warrant are immune from suits alleging a Constitutional violation." *Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1469 (E.D.Pa.1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979)).

**8.** Section 6105(b) reads as follows: Each law enforcement agency shall provide the abused person with oral and written notice of the availability of safe shelter and of domestic violence services in the community, including the hotline number for domestic violence services. The written notice ... shall include the following statement:

"If you are the victim of domestic violence, you have the right to go to court and file a petition requesting an order for protection from domestic abuse pursuant to the Protection From Abuse Act, which could include the following:
(1) An order restraining the abuser from further acts of abuse.
(2) An order directing the abuser to leave your household.
(3) An order preventing the abuser from entering your residence, school, business or place of employment.
(4) An order awarding you or the other parent temporary custody of or temporary visitation with your child or children.
(5) An order directing the abuser to pay support to you and the minor children if the abuser has the legal obligation to do so." 23 Pa.Cons.Stat.Ann. § 6105(b).

**9.** Section 6106(g) states:

The petition and orders shall be served upon the defendant, and orders shall be served upon the police departments with appropriate jurisdiction to enforce the orders. Orders shall be promptly served upon the police. Failure to serve shall not stay the effect of a valid order.
23 Pa.Cons.Stat.Ann. § 6106(g).

rights by using excessive force to "throw" plaintiff's arm away from the bathroom door. Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 110, 117–18. Plaintiff contends that as a result of the allegedly excessive force used by Officer Coopersmith, plaintiff suffered tenderness in the right arm, nightmares, sleep disturbances, anxiety, disorientation, depression, stress related symptoms, loss of energy and stamina, inability to trust police or authority, and personal violation. Pl.'s Compl. at ¶ 52. Plaintiff did not seek immediate medical attention, but worked on her arm through "reflexology," which plaintiff is trained in.[10] Defs.' Mot. for Summ.J., App § 9, Pl.'s Dep. at 118. Plaintiff first went to see a doctor regarding aches in her right arm approximately one year after the incident, *Id.* at App. § 13, and the doctor diagnosed plaintiff as having "overwork syndrome." *Id.* at App. 9, Pl.'s Dep. at 117–18.

■ In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that all claims that law enforcement officers have used excessive force are to be analyzed under the Fourth Amendment "reasonableness" standard. *Id.* at 394–95, 109 S.Ct. 1865. Thus, plaintiff's excessive force claim is properly analyzed under the Fourth Amendment, rather than the Fourteenth Amendment.

■ In assessing plaintiff's excessive force claim under the Fourth Amendment, the issue is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.*

(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). The Court's assessment of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

■ In this case, summary judgment is appropriate if, as a matter of law, the evidence would not support a reasonable jury finding that the officers' actions were objectively unreasonable. *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir.1995). Plaintiff has presented the following evidence to the Court regarding Officer Coopersmith's use of excessive force:

> So I went into the bathroom to start changing. And I closed the door behind me. And I was proceeding to put on my bra.... And Susan Coopersmith opened the door. And I went to close the door again and she took and threw my arm away and said the door will have to stay open and she had to watch me.

Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 110. Plaintiff further describes that Officer Coopersmith "took my hand and threw my hand over pretty hard." *Id.* at 118. The record reveals no other evidence that either Officer Coopersmith or Officer Koehler used objectively unreasonable force in removing plaintiff from the premises. The Court finds that a reasonable jury would conclude that the force utilized by Officer Coopersmith in order to maintain a watchful over plaintiff was objectively reasonable. Thus, in the context of executing a PFA Order in a potentially volatile domestic situation, Officer Coopersmith's use of force to monitor plaintiff's activities in order to ensure the safety

10. In her deposition, plaintiff defines reflexology as "an integrative biological health service," where pressure is applied to the reflex areas of the body, which consist of 7,200 nerve endings in each hand and foot. Reflexology "encourages improved instruction to each and every single organ and part of your body, thus persuading the body to biologically self-correct." Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 13.

of plaintiff and the officers alike, and where plaintiff suffered the slightest of injury, if at all, was objectively reasonable. *See Cronin v. West Whiteland Township,* 994 F.Supp. 595, 601 (E.D.Pa.1998) (noting the recognized "combustible nature of domestic disputes") (quoting *Tierney v. Davidson,* 133 F.3d 189, 197 (2d Cir.1998)). Accordingly, Officers Coopersmith and Koehler are entitled to summary judgment with regard to plaintiff's claim of excessive force in violation of the Fourth Amendment.

C. *Plaintiff Has Failed to Show That the Officers Unreasonably Seized the Dental Flosser As Evidence.*

Plaintiff argues that Officer Koehler, in violation of the Fourth Amendment, conducted a warrantless seizure of the weapon that allegedly was used to inflict injury upon Winters, the dental flosser, without informing plaintiff that she had the right to refuse. Defendants assert that plaintiff consented to the seizure of the dental flosser and, therefore, there is no Fourth Amendment violation.

 An officer acting pursuant to valid consent can conduct a warrantless search without violating the Fourth Amendment. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222–23, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In order for the consent to be valid, it must shown by a preponderance of the evidence that the consent was freely and voluntarily given. *See id.* (citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)). The Court must consider the totality of the circumstances to determine whether the consent was freely given. *See United States v. Deutsch,* 987 F.2d 878, 883 (2nd Cir.1993). Courts consider certain factors in determining whether consent was voluntary, i.e., "the age of the accused, his education, his intelligence, whether he was advised of his constitutional rights, and whether the questioning was repeated and prolonged." *United States v. Kim,* 27 F.3d 947, 955 (3d Cir.1994), *cert.*

*denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *see also United States v. Velasquez,* 885 F.2d 1076, 1081–83 (3d Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). Knowledge of the right to refuse to consent prior to consenting is one factor to be taken into account, but such knowledge does not have to be established as a prerequisite to establishing voluntary consent. *See Schneckloth,* 412 U.S. at 227, 231–34, 93 S.Ct. 2041.

 In this case, plaintiff testified that one of the officers told her that Winters was going to press criminal charges against plaintiff for allegedly assaulting Winters with a dental flosser. Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 108–09. Officer Koehler then directed plaintiff to "go get it [the dental flosser]." *Id.* at 109. Plaintiff testified:

> I went into the bathroom. I got [the dental flosser], as [Officer Koehler] ordered, with … both the tips. And I went back out and gave him the dental flosser…. He left, … took [the dental flosser] somewhere, came back up and he just said to me, I have to take this. And I didn't … argue with him. I didn't question him.

*Id.*

The record reveals that plaintiff is a fifty-two year old high school graduate. There is no evidence that plaintiff was under the influence of alcohol or drugs. Nor does the evidence show that Officer Koehler threatened, intimidated, or coerced plaintiff into retrieving the dental flosser, or obtained the dental flosser through subterfuge or deception. Plaintiff was not under arrest, or otherwise detained, in police custody, or subjected to prolonged or repeated questioning. Further, plaintiff's testimony reveals that plaintiff promptly acquiesced, she did not object to Officer Koehler's request, and that she knew Winters intended to press criminal charges against her. Therefore, the Court finds that, under the total circumstances of this case, plaintiff voluntari-

ly consented to Officer Koehler's seizure of the dental flosser. Defendants are entitled to summary judgment with regard to plaintiff's claim that Officer Koehler's seizure of the dental flosser violated the Fourth Amendment.

### D. Plaintiff Has Failed To State A Viable Claim For Malicious Prosecution.

Plaintiff avers that defendants, particularly Officer Coopersmith, filed criminal charges of simple assault and harassment without probable cause for retaliatory purposes, in violation of the Fourth and Fourteenth Amendments.[11] Defendants argue that plaintiff fails to establish either that she was seized for purposes of creating a deprivation of liberty or that there was an absence probable cause. Alternatively, defendants posit that they are entitled to qualified immunity. Given that the Court concludes that there is no genuine issue of material fact as to the presence of probable cause, there is no need to address defendants' arguments concerning whether plaintiff was seized for purposes of malicious prosecution or that defendants are entitled to qualified immunity.

██ A civil rights claim for malicious prosecution is actionable under section 1983. See Losch v. Borough of Parkesburg, Pennsylvania, 736 F.2d 903, 907–08 (3d Cir.1984) ("It is clear that the filing of charges without probable cause and for reasons of personal animosity is actionable under § 1983. Similarly, institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983."). In Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), reh'g denied, 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994), the Supreme Court stated that if a malicious prosecution claim violated a constitutional right, it was most likely a violation of the Fourth Amendment right to freedom from seizure, and not the right to substantive due process of the Fourteenth Amendment. See id. at 273–34, 114 S.Ct. 807. Following Albright, courts of appeals and courts within this district have adjudicated section 1983 malicious prosecution claims only under the Fourth Amendment, rather than the Fourteenth Amendment. See Uboh v. Reno, 141 F.3d 1000 (11th Cir.1998); Murphy v. Lynn, 118 F.3d 938 (2d Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); Mateiuc v. Hutchinson, No. 97–1849, 1998 WL 240331, at *2 (E.D.Pa. May 14, 1998) (relying upon Albright and entering summary judgment in favor of defendants as to plaintiff's Fourteenth Amendment malicious prosecution claim); Garcia v. Micewski, No. 97–5379, 1998 WL 547246, at *6 (E.D.Pa. Aug.24, 1998) (same); Gallo v. City of Philadelphia, 975 F.Supp. 723, 726 (E.D.Pa.1997), rev'd on other grounds, 161 F.3d 217 (3d Cir.1998).

Recently, however, the Third Circuit in Torres v. McLaughlin, 163 F.3d 169 (3d Cir.1998), found the holding of Albright to be more expansive than previously held. The Third Circuit concluded that "Albright stands for the broader proposition that a section 1983 claim may be based on a constitutional provision other than the Fourth Amendment. However, [the Third Circuit] note[s] that Albright commands that claims governed by explicit constitutional text may not be grounded in substantive due process." Id. at 172.

██ In this case, plaintiff claims that Officer Coopersmith deprived plaintiff of her liberty in violation of the Fourteenth Amendment by maliciously filing charges against plaintiff without probable cause. Pl.'s Compl. at ¶ 87. Plaintiff's claim for malicious prosecution arising out of the alleged liberty deprivation pursuant to the

---

11. Plaintiff concedes that Officer Koehler should not be named as a defendant as to the issue of malicious prosecution because he had no involvement in the criminal charges being filed against plaintiff. Therefore, summary judgment shall be granted as to Officer Koehler on this issue.

Fourteenth Amendment sounds in substantive due process, i.e., the right to be free from prosecution without probable cause. Under *Albright* and *Torres*, therefore, plaintiff's Fourteenth Amendment malicious prosecution cannot survive because claims for malicious prosecution for which there is explicit textual constitutional support, i.e., the Fourth Amendment prohibition against unreasonable "seizure,"[12] may not be based on generalized substantive due process grounds. *See Torres*, 163 F.3d at 173 (" '[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eight Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment.' ") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998)).

■■■ Additionally, plaintiff claims a Fourth Amendment violation of malicious prosecution. In order to prevail on this claim, plaintiff must prove the elements of malicious prosecution pursuant to the common law tort of the forum state, which in this case is Pennsylvania. *See Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir.1996). In Pennsylvania, a party bringing a malicious prosecution claim must demonstrate that: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice. *See id.* Additionally, because this malicious prosecution is based upon the Fourth Amendment, the Third Circuit has adopted an additional requirement that plaintiff must show "some deprivation of

liberty consistent with the concept of 'seizure.' " *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir.1998), *rev'd on other grounds*, 161 F.3d 217 (3d Cir.1998), (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996)). A person can be liable for malicious prosecution if he " 'fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment' in deciding whether to prosecute." *Garcia v. Micewski*, No. 97–5379, 1998 WL 547246, at *9 (E.D.Pa. Aug.24, 1998) (quoting *Torres v. McLaughlin*, 966 F.Supp. 1353, 1364 (E.D.Pa.1997), *rev'd on other grounds*, 163 F.3d 169 (3d Cir.1998)).

In this case, the inquiry turns on whether plaintiff has met the burden of showing that Officer Coopersmith had no probable cause to initiate the simple assault and harassment proceedings against plaintiff based upon the information Officer Coopersmith obtained from Winters in the course of Winters' request for an emergency PFA Order. Defendants argue that there is no genuine issue of material fact that Officer Coopersmith had probable cause to file the criminal complaint against plaintiff.

■■■ "Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense. 'Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting.' " *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir.1993) (quoting *Miller v. Pennsylvania Railroad Co.*, 371 Pa. 308, 89 A.2d 809, 811 (1952)) (citations omitted). Probable cause means

---

**12.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

U.S. Const. amend. IV.

more than mere suspicion, but does not require the police to have evidence beyond a reasonable doubt. *See United States v. Glasser,* 750 F.2d 1197, 1205 (3d Cir.1984). Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing the suspect had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The question of probable cause is generally one for the jury, but where the uncontroverted facts could not lead a reasonable person to find that probable cause was lacking, the Court may decide the issue. *See Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 190 (3d Cir.1984); *Huffaker v. Bucks County Dist. Attorney's Office,* 758 F.Supp. 287, 291 (E.D.Pa.1991).

Officer Coopersmith charged plaintiff with simple assault and harassment. Defs.' Mot. for Summ.J., App. § 2. A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.Cons.Stat.Ann. § 2701(a)(1). A person commits the crime of harassment when "with intent to harass, annoy or alarm another person, he strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same ... or he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." 18 Pa.Cons.Stat.Ann. § 2709(a)(1), (3).

It ·is uncontroverted that on the night of September 14, 1996, plaintiff and her husband, Winters, had an altercation concerning an electric dental flosser. Defs.' Mot. for Summ.J., App. § 9, Pl.'s Dep. at 87–89. After some time, Winters got into a van and left the residence. *Id.* at 93. At the police station Winters told Officer Coopersmith that plaintiff scratched him with a dental flosser. Pl.'s Resp., App. § 11, Coopersmith Dep. at 8. Winters then showed Officer Coopersmith the scratches on his chest, and police photographs were taken of the injuries. *Id.* at 8, 12. Officer Coopersmith informed Winters of his right to get an emergency PFA Order, which Winters chose to do. *Id.* at 9–10. Officer Coopersmith led Winters to the office of a District Justice, where Winters spoke directly to the District Justice. *Id.* at 10, 13–14. The District Justice issued an emergency PFA Order ordering plaintiff to refrain from abusing Winters and removing plaintiff from the residence. *Id.* at 14; Defs.' Mot. for Summ.J., App. § 1.[13] Therefore, the Court finds that, based upon the evidence possessed by Officer Coopersmith at the time she filed the simple assault and harassment charges against plaintiff, there was probable cause to do so.

Plaintiff further contends that Officer Coopersmith filed the criminal charges in retaliation against plaintiff. In her response to defendants' motion for summary judgment, plaintiff refers the Court to *Losch v. Borough of Parkesburg, Pennsylvania,* 736 F.2d 903 (3d Cir.1984), where the Third Circuit found in part that the district court should not have granted summary judgment as to plaintiff's malicious prosecution claim "unless the opponent's evidence is 'too incredible to be believed by reasonable minds.'" *Id.* at 909. In *Losch,* plaintiff ·was charged with harassment and threatening a police officer when plaintiff wrote a note to a police officer, advising the officer "to stop picking on my wife and children and accepting

---

**13.** Throughout her pleadings, plaintiff has insinuated that the injuries to Winters were self-inflicted by an object other than the dental flosser, that the photographs may have been doctored, or that the injuries may have been falsely created by body art or tattoos. Although plaintiff has produced an expert report indicating that the injuries to Winters may have been self-inflicted by an object other than the dental flosser, Pl.'s Resp., App. §§ 5, 6, plaintiff has produced no evidence to support her speculations that the photographs were doctored or that the injuries to Winters were false.

information that is not true." *Id.* at 906. Plaintiff's note also indicated that plaintiff "ha[s] intentions of taking this matter before the County District Attorney's Office and having you [the officer] arrested for a number of offenses." *Id.* To support plaintiff's contention that defendants maliciously filed criminal charges against plaintiff for the purpose of penalizing plaintiff for exercising his First Amendment rights by writing the note, plaintiff offered, among other evidence, at least three sworn witness statements: a statement by plaintiff's wife and daughter each recalling being told by an officer that he was "going to get [plaintiff] back ... and have him arrested"; and a statement by a former Assistant District Attorney attesting that he believed the charges were filed maliciously. *Id.* at 908.

In this case, as evidence of malice 'by Officer Coopersmith, plaintiff relies upon the Danville incident. However, this incident did not directly involve Officer Coopersmith, nor has plaintiff adduced evidence that Officer Coopersmith even had knowledge of the Danville incident. In any event, even assuming that Officer Coopersmith had acted maliciously, plaintiff has not fulfilled her burden to show that there was no probable cause to file the charges against plaintiff. Therefore, summary judgment shall be granted in favor of defendants as to plaintiff's Fourth Amendment malicious prosecution claim.

### E. *Plaintiff Has Not Produced Sufficient Evidence to Establish Supervisory Liability for Chief Fretz.*

Plaintiff's complaint does not allege any specific allegations of supervisory liability against Chief Fretz. However, it appears that in plaintiff's subsequent filings, albeit without leave to amend the complaint, she attempted to impose supervisory liability upon Chief Fretz for his failure to train and supervise police officers, and for approving the criminal charges filed by Officer Coopersmith against plaintiff. Defendants argue that plaintiff has failed to adduce sufficient evidence to support supervisory liability against Chief Fretz.

The fact that a defendant is in a supervisory position is insufficient to establish liability as there is no respondeat superior liability under section 1983. *See Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976). In order to impose supervisory liability against Chief Fretz, the Court must determine that the harm to plaintiff was caused by a constitutional violation, and if so, that Chief Fretz was responsible for that violation. *See Bielevicz v. Dubinon*, 915 F.2d 845, 850–51 (3d Cir.1990). The Court having found that there was no constitutional violation committed by the underlying officers, supervisory liability cannot be imposed upon for Chief Fretz for an alleged failure to train and supervise, or for approving the criminal charges against plaintiff. *See Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1473–74 (E.D.Pa.1994) (granting summary judgment to defendants Chief of Police and Mayor in part because their liability was grounded in the liability of an underlying police detective, who the court found had not violated plaintiff's constitutional rights); *Valenti v. Sheeler*, 765 F.Supp. 227, 232 (E.D.Pa. 1991) (finding that defendant Chief of Police was not liable for failure to train or adequately supervise where the court concluded that the conduct of the underlying officers was reasonable and based on probable cause).

Assuming arguendo that Officers Coopersmith and Koehler had committed a constitutional violation, plaintiff has failed to put forth sufficient evidence to show deliberate indifference by Chief Fretz. The Third Circuit has set forth the standards to be applied to an action for supervisory liability under section 1983:

[T]he standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve. In either case, a "person" is

not the "moving force [behind] the constitutional violation" of a subordinate, unless that "person"—whether a natural one or a municipality—has exhibited deliberate indifference to the plight of the person deprived.

*Sample v. Diecks,* 885 F.2d 1099, 1117–18 (3d Cir.1989) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Plaintiff, therefore, must identify a specific supervisory failure by Chief Fretz that evidences deliberate indifference to plaintiff's plight, and that there is a close causal relationship between Chief Fretz's alleged failure or deficiency and the ultimate injury to plaintiff. *See Sample,* 885 F.2d at 1118.

In order to prevail against Chief Fretz, plaintiff would be required to show that the injury to plaintiff could have been avoided had Officers Coopersmith and Koehler been trained under a program that was not deficient in an identified respect. *See City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1206. Considering the facts in the light most favorable to the plaintiff, plaintiff asserts that Chief Fretz failed to train and supervise police officers in handling domestic violence situations, executing PFA Orders, and filing criminal charges. As a result, plaintiff avers that her Fourth Amendment rights were violated.

Plaintiff, however, fails to identify a specific practice that Chief Fretz failed to employ that points to Chief Fretz's deliberate indifference to plaintiff's injury, and that plaintiff's injury is affirmatively linked to Chief Fretz's failure to implement a certain practice. Plaintiff offers little evidence as to direct involvement in or acquiescence by Chief Fretz in a deliberate failure to implement a specific training or supervisory practice that is directly linked to plaintiff's alleged deprivation of rights in this instance. Plaintiff's only evidence of direct involvement by Chief Fretz in the incident before this Court is that Chief Fretz approved Officer Coopersmith's fil-

ing criminal charges against plaintiff. Pl.'s Resp., App. § 10, Fretz Dep. at 11. Mere approval of a prospective criminal complaint, absent any indicia that Chief Fretz had prior knowledge of the incident or that the complaint appeared suspicious on its face, does not convert Chief Fretz into the "moving force" behind any alleged constitutional violation committed by Officer Coopersmith. Moreover, while plaintiff makes reference to a prior incident that occurred between plaintiff and the Palmer Township Police Department, specifically, the Danville incident, plaintiff does not assert that any prior injuries to plaintiff were similar to the injuries asserted here, that there was a specific failure to train and supervise by Chief Fretz, or that Chief Fretz was the "moving force behind" or acquiesced to such deliberate indifference.

Even assuming that Officers Coopersmith and Koehler violated plaintiff's constitutional rights, plaintiff has failed to adduce sufficient evidence to substantiate a claim of deliberate indifference by Chief Fretz, or that any injury to plaintiff was affirmatively linked to Chief Fretz's deliberate indifference. Therefore, the Court finds that defendants are entitled to summary judgment regarding plaintiff's claim of supervisory liability against Chief Fretz.

F. *Plaintiff Has Not Produced Sufficient Evidence To Establish An Unlawful Policy Or Custom By Palmer Township And The Palmer Township Police Department.*

In her complaint, plaintiff avers that Palmer Township and the Palmer Township Police Department have engaged in "policies and customs of encouraging, tolerating, permitting and ratifying a pattern of illegal actions which was known to it or should have been known to it." Pl.'s Compl. at ¶ 55. Plaintiff also contends that Palmer Township and the Palmer Township Police Department have "grossly failed to train their police officers in the fundamental law of investigations and arrest and on executing PFA's and evictions

which directly lead [sic] to plaintiff's damages." Pl.'s Compl. at ¶ 56. In response, defendants argue that there is no evidence on the record to support a finding of policies or customs by Palmer Township or the Palmer Township Police Department to violate citizens' constitutional rights, and that plaintiff has presented no evidence to show defendants' deliberate indifference via their alleged failure tot rain. As with Chief Fretz, the Court having concluded that no underlying constitutional violation was committed by Officers Coopersmith and Koehler, municipal liability cannot be imposed upon Palmer Township and the Palmer Township Police Department. Even assuming that a violation was committed by Officers Coopersmith and Koehler, the Court finds that there is no municipal liability in this case.

A municipality can be held liable under section 1983 for implementing an official policy, practice or custom " 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' " *Losch v. Borough of Parkesburg, Pennsylvania,* 736 F.2d 903, 910 (3d Cir.1984) (quoting *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). As with supervisory liability, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch,* 736 F.2d at 910.

Plaintiff has failed to produce any evidence supporting her contentions that Palmer Township's and the Palmer Township Police Department's customs or policies were deliberately indifferent with regard to citizens' Fourth Amendment rights that allegedly resulted in injury to plaintiff. Plaintiff does not specifically identify the deficient customs or policies utilized by Palmer Township and the Palmer Township Police Department that caused plaintiff's injury. nor does plaintiff identify a particular aspect of a failure to train that evidences either Palmer Township's or the Palmer Township Police Department's deliberate indifference, and the causal link between an alleged failure to train and the injury to plaintiff. Plaintiff again refers to incidents such as the Danville incident, but there is no similar injury to plaintiff involving a violation of plaintiff's Fourth Amendment rights, malicious prosecution, or the improper execution of a PFA Order. The record also does not reflect evidence of similar civil rights violations of other persons allegedly committed by officers of the Palmer Township Police Department. In essence, plaintiff has failed to "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone,* 159 F.3d 120, 127 (3d Cir.1998). To impose municipal liability upon Palmer Township and the Palmer Township Police Department, it is not enough for plaintiff to show that a particular officer is unsatisfactorily trained because the officer's shortcomings may have resulted from factors other than a faulty training program. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It is also not enough for plaintiff to prove that her injury could have been avoided if the officers had had better or more training that would have enabled the officers to avoid the particular injury-causing conduct. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.*

Since plaintiff has failed to show the inadequacy of the officers' training program by identifying a specific deficiency,

nor has plaintiff specified an affirmative link or close relation between the identified deficiency and the alleged injury to plaintiff, even assuming Officers Coopersmith and Koehler violated plaintiff's constitutional rights, there can be no municipal liability and summary judgment is granted in favor of defendants.

### G. *Plaintiff's State Law Claim.*

Plaintiff alleges that, pursuant to Pennsylvania law, defendants defamed her in the local press by unlawfully releasing to the local newspaper information concerning the PFA Order obtained by Winters against plaintiff and the criminal charges filed by Officer Coopersmith against plaintiff. Defendants argue that the information contained in the criminal complaint are absolutely privileged, and that Palmer Township and the Palmer Township Police Department are immune from claims of intentional torts, such as defamation, allegedly committed by governmental employees.[14]

Having granted summary judgment in favor of all of the defendants as to all of plaintiff's section 1983 claims, and there being no independent basis for federal jurisdiction over the state law claim, the Court need not address the merits of plaintiff's defamation claim. Therefore, the Court will exercise its discretion, pursuant to 28 U.S.C. § 1367(c)(3), and will decline supplemental jurisdiction over plaintiff's state law claim.[15] *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).

### V. CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is granted in favor of defendants as to plaintiff's claims under 42 U.S.C. § 1983, and plaintiff's state law claim is dismissed without prejudice.

---

**14.** Plaintiff has conceded that only Palmer Township as a local government is exempt from liability for defamation, therefore, summary judgment shall be entered in favor of Palmer Township as to plaintiff's defamation claim. Pl.'s Resp., § J, at 22.

**15.** 28 U.S.C. § 1367(c)(3) reads as follows: The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).